700 So.2d 1039 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jerry Glenn EVANS, Defendant-Appellant.
STATE of Louisiana, Plaintiff-Appellee,
v.
Byron Keith NORA, Defendant-Appellant.
Nos. 29675-KA, 29676-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
Rehearing Denied October 23, 1997.
*1040 Geary S. Aycock, West Monroe, for Defendant-Appellant Jerry Glenn Evans.
Amy C. Ellender, Mer Rouge, for Defendant-Appellant Byron Keith Nora.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Madeleine M. Slaughter, Assistant District Attorney, for Plaintiff-Appellee.
Before NORRIS, STEWART and GASKINS, JJ.
NORRIS, Judge.
The defendants, Jerry Glynn Evans and Byron K. Nora, were separately charged but jointly tried and each convicted by a jury for possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. Their appeals having been consolidated, appellants seek review of their convictions based on several assignments of error, one of which is that the evidence presented at the trial of the matter was not sufficient to sustain the verdict.

Facts
On the evening of February 13, 1996, Evans arrived at his Aunt Patricia Kelly's house in Ruston to attend a barbecue. There were several people at this barbecue, including Nora, who was living with Patricia. Also present were Tamika McDonald and Franklin Brewster, both cousins of Evans. Brewster and Evans had known Nora for approximately three weeks.
When Brewster arrived at the barbeque, he was carrying a gun, a .380 Lorcin pistol. At the request of Nora's girlfriend's sister, he placed the pistol out of sight. Neither Evans nor Nora saw Brewster initially arrive at the house, or hide the gun.
Earlier that day, Nora called an out-of-state uncle to request a loan for $1,500.00 to be used to make a down payment on a home. The uncle agreed to make the loan and Nora asked him to wire the money to the Western Union in Monroe, as he was not certain there was a Western Union office in Ruston.
Being unfamiliar with Monroe, Nora called a friend, Reginald Hill, an employee of the Monroe Fire Department and one presumably familiar with the Monroe area, for help in finding the Western Union. Nora then made plans to go to Hill's house, and thereafter, Hill would assist him in traveling to the Western Union. At Nora's request, Evans borrowed Tamika's vehicle, a four door 1987 *1041 Pontiac Grand Am, so that they could go to Monroe. Tamika loaned the car to Evans at approximately 11:00 P.M. that night.
Evans and Nora did not go directly to Reginald Hill's house; rather Evans, Nora, and Brewster testified that they were bored and decided to go "blocking" or driving around in Ruston. Evans, who did not have a driver's license, got in the driver's seat; Nora sat in the front passenger seat. Brewster retrieved his gun from its hiding place, and walked to the car. Brewster proceeded to join Evans and Nora, who were already in the car[1] with their backs turned toward him. Brewster opened the rear passenger side door and sat on the rear passenger side seat, directly behind Nora. According to Brewster, neither Evans nor Nora saw him with the gun in the car, and at no time was the subject of the gun discussed. Brewster, a very large man, testified that he laid the gun at his side for awhile, before placing the gun under the front passenger seat.
Brewster rode with Evans and Nora throughout Ruston for at least an hour before he was dropped off. As Evans and Nora were driving away, Brewster realized that he had left his gun in the car. Brewster began yelling at Evans and Nora to get them to stop the car, but because the windows were rolled up and the music was playing loudly, they did not hear him.
In route to Monroe, Evans and Nora pulled into a Texaco gas station in West Monroe for Evans to use the restroom. Meanwhile, Officer Theodos, of the West Monroe Police Department, was searching for two black males suspected of committing an armed robbery. Evans and Nora are two black males. From about one hundred yards away, Officer Theodos spotted Evans and Nora pull up in the Pontiac Grand Am at the Texaco station at 2:17 A.M. Officer Theodos said that the car pulled up to the pumps, then backed up to the rear of the store and sat there for a few minutes, then pulled up to the entrance of the store. After several more minutes, he saw one of the vehicle occupants get out of the car and walk to the rear of the Texaco building where the bathroom was located. During the time the occupant was walking to the back of the building, Officer Theodos drove his police vehicle to another adjacent location to further observe the two individuals. Officer Theodos said that the occupant of the car never made it to the bathroom; he believed that the instant he saw him, he backtracked to the car. Evans testified that he used the restroom facilities, and did not see Officer Theodos while he was at the Texaco station. Nora testified that he did not see Officer Theodos at the Texaco station either.
Because Officer Theodos's suspicions were aroused, he proceeded to follow them as they drove away. He testified that they drove off at a normal speed, but as soon as he pulled up behind them in his car, they made a "hard right" into a nearby Racetrac convenience store, suggesting to him that they got off the road as soon as they saw him trailing them. Nora testified that he told Evans to pull into the Racetrac to buy a pack of gum, and that they did not see any police behind them. The officer testified that when they pulled into the Racetrac, he followed them. However, the Racetrac clerk and Nora each testified that the first police car did not drive onto the lot and behind the Grand Am until a minute or two after Evans and Nora arrived.
Nora got out of the car and approached the Racetrac store window. When Officer Theodos drove onto the Racetrac lot, Evans approached the officer. The officer asked Evans for his ID, but he said that he did not have any. Evans said his name was Jerry Williams and that he came from Ruston, picked up Nora in West Monroe and was traveling to Monroe. Meanwhile, Nora returned from the Racetrac store window where he bought gum[2] and stopped short of where Officer Theodos and Evans were standing. Officer Theodos then walked over *1042 to Nora alone. Nora said that Evans's name was Jerry Brewster and that both himself and Evans had departed from Ruston to go to Monroe. The officer then went to Evans and told him what Nora said; Evans replied that his real name was Jerry Evans. Neither Evans nor Nora had outstanding warrants, and the vehicle they were driving was not reported as stolen. Evans and Nora both acknowledged previous felony convictions when confronted with the issue.
Officer Theodos then asked Evans for permission to search the vehicle and Evans agreed. Officer Theodos testified that they were cooperative and did not appear to be intoxicated. Evans stated that he had no guns or other weapons in the car. Officer Theodos approached the driver's side of the car with a flashlight, opened the door, crouched down, looked underneath and behind the seat, and did not observe any contraband. Then the officer walked around to the passenger side of the vehicle and opened the door. The officer lowered himself so that he could look under the front passenger seat. On his way down, but "not going all the way down," he saw the butt of a gun under the seat. The handle of the gun was flush with the front edge of the seat. The officer seized the weapon. The gun was not in a holster. The gun was identified as a .380 cal. Lorcin, and was loaded with a bullet in the chamber. Officer Theodos ran a check on the serial number of the gun and it was not reported as stolen.
The officer then asked Evans and Nora if the weapon belonged to either of them; both replied that they knew nothing about it. According to Officer Theodos, they said the car belonged to a woman,[3] who loaned it to them. The officer had a registration check run, and his dispatcher phoned Tamika, who confirmed that she owned the car and loaned it to Evans and Nora. She denied, however, knowing that there was a gun in the car. The officer then advised them of their rights and charged them each with possession of a firearm by a convicted felon. The gun was not tested for fingerprinting. The officer testified that he did not do a thorough search of the vehicle, but "just kind of glanced through it." The officer looked for masks or other evidence that may have implicated Evans and Nora in the armed robbery, but nothing was found. The suspects in the armed robbery of the nearby motel were eventually caught.
Later that day, Brewster made a written statement to the district attorney's office stating, "I forgot I left my firearm in the car by mistake. I yell [sic] at them to tell them I forgot it but they didn't hear."

The Law
By Nora's second and Evans's third assignment of error, defendants contest the sufficiency of the evidence to support their convictions. When a defendant alleges both an insufficiency of the evidence and one or more other trial errors, the appellate court should first determine the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La. 1992); State v. Warren, 28,889 (La.App.2d Cir. 12/11/96), 1996 WL 709130, ___ So.2d ___.
The constitutional standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95,1132 (La.2/28/96), 668 So.2d 1132.
Where circumstantial evidence is used to prove execution of the offense, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence must be excluded to convict. La. R.S. 15:438; State v. Cummings, supra. This evidentiary rule restrains the factfinder in the first instance, and the reviewer on appeal, to accept as proven all that the evidence tends to prove, *1043 and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Young, 618 So.2d 1149 (La.App. 2d Cir.1993). Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. Id. The circumstantial evidence rule is not a more demanding standard of review than the standard enunciated in Jackson v. Virginia, but is a useful methodology for its application by an appellate court upon review of cases that hinge on circumstantial evidence. State v. Bailey, 511 So.2d 1248 (La.App. 2d Cir.1987), writ denied, 519 So.2d 132 (1988). Nor are the two standards of review completely separate. All evidence, both direct and circumstantial, must be sufficient under Jackson v. Virginia to satisfy to a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Cummings, supra.
To convict a defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Warren, supra.
The elements of a previous conviction of an enumerated felony and the absence of the ten-year statutory period are conceded and not an issue in this case.

Discussion
The possession of the firearm and general intent to possess must be proven to convict Evans and Nora of this present offense. The State presented testimony that a.380 Lorcin pistol was found under the front passenger's seat. Both Evans and Nora testified that they never touched the gun; that they were not aware that the gun was in the vehicle until it was retrieved by the police; and that they neither owned the gun nor the vehicle in which it was found. The State presented no evidence that either defendant exercised actual possession of the gun. No evidence was adduced that either defendant actually handled or wielded the gun; as no fingerprints were taken, there was no evidence that they had even touched it. Therefore, the State was required to prove that Evans and Nora exercised constructive possession of the gun.
Constructive possession is sufficient to satisfy the possession element of La. R.S. 14:95.1; State v. Day, 410 So.2d 741 (La.1982); State v. Wesley, 28,941 (La.App.2d Cir. 12/13/96), 685 So.2d 1169. Constructive possession occurs when the firearm is subject to a defendant's dominion and control. State v. Wesley, supra. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. Id. Mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. State v. Fisher, 94, 2255 (La.App. 1st Cir. 12/15/95), 669 So.2d 460, writ denied, 96, 0958 (La.9/20/96), 679 So.2d 432. In addition, jurisprudence has added another aspect to the offense of La. R.S. 14:95.1  awareness. In other words, the State must prove that the offender was aware that a firearm is in his presence and that he had the general criminal intent to possess the weapon, i.e., a knowing or intentional possession is necessary for a violation of La. R.S. 14:95.1. State v. Woods, 94,2650 (La.App. 4th Cir. 4/20/95), 654 So.2d 809, writ denied, 95, 1252 (La.6/30/95), 657 So.2d 1035, and citations therein. The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Trahan, 425 So.2d 1222 (La.1983).
While Evans and Nora may have been in a position to exercise dominion and control[4] over the weapon, the State failed to prove beyond a reasonable doubt that defendants were aware[5] that a gun was in the *1044 vehicle. It is undisputed that the car in which the gun was found did not belong to the defendants. There is also uncontradicted testimony from Brewster that the gun belonged to him, not to Evans or Nora. Although proof that other people owned the car and gun does not settle the issue of awareness, when those facts are combined with a lack of direct evidence that they were aware of the gun, it underscores the necessity of proof by circumstantial evidence.
The State argues additional facts that purport to establish that Evans and Nora were aware of the gun. Brewster testified that his gun was secured in a snap holster when he brought it into the car; Officer Theodos testified that he found no holster. The State argues that the disappearance of the holster means that the defendants must have removed the gun from the holster, thus establishing that they were aware of the gun's presence. This argument hinges on Brewster's recollection of putting the holstered gun in the car, and this is not completely assured; it is equally reasonable Brewster could have been mistaken, that the officer may not have found the holster, assuming one was there (Officer Theodos testified that he only performed a cursory search on the car), or that Tamika, or some other person, may have removed the holster from the car after the arrest. These hypotheses are just as reasonable as the one proffered by the State.
The State strenuously argues that the seat well of the Grand Am contained a "hump" which, according to the State, would prevent a gun from sliding from under the rear to the forward portion of the front passenger side seat (where Brewster said he placed it) to directly under the front most part of that front seat (where Officer Theodos found it). However, the evidence that such a "hump" was present in the 1987 Pontiac Grand Am is suspect on review. Officer Theodos did not perform a thorough search of the vehicle, but rather "kind of glanced through it." The State based its "hump" theory on a subsequent examination of a 1996 Grand Am. On re-direct examination, the following colloquy took place between prosecutor and Officer Theodos:
Q. Alright. And the well that you're describing under the seat of the car, just for the ladies and gentlemen of the jury who may not own a Pontiac, a 1996 Pontiac Grand Am, can you draw me a side view of that well. But, before you draw it did I ask you recently to go look at the new Pontiac Grand Am's at the wells?
A. Yes, ma'am.
(emphasis added)
However, the owner of the car testified that she owned a 1987 Pontiac Grand Am and not a 1996 or a new Pontiac. She testified that she owned the car for at least a year, cleaned it every two weeks, and that the surface under the passenger side seat was flat, i.e., no well or hump. She further testified that items placed under the seat occasionally slide out.
Additionally, the State argues that providing the police with fictitious names is evidence of defendant's guilty minds. See State v. Washington, supra. Evans testified that he provided the false name of "Jerry Brewster" because he was driving without a license and he did not want to go to jail. Nora said Evans's name was Jerry Brewster because he was dating Evans's Aunt whose last name is Brewster, and he assumed Evans's mother had the same name.[6] In light of the circumstances, it can not be said that their explanations for providing the incorrect names was beyond what a rational trier of fact could consider as reasonable.
The State argues that the facts of this case most resemble the facts in the case of State v. Washington, supra. In that case, the defendant was a passenger in a Cadillac that was being followed by the police. When the Cadillac stopped, police approached the defendant *1045 and the driver of the vehicle. The defendant provided a false name, and the police noticed a gun in plain view on the floorboard of the vehicle. The defendant argued that he did not own the vehicle, was not driving the vehicle, and the guns retrieved therefrom were not traced to him. The court did not find merit in defendant's argument that there was insufficient evidence to find that he had possession. "From the position of the pistol, the person in the passenger's seat, the defendant, while seated in the car, would likely have had his feet touching the pistol and surely had to have been aware of the gun's presence." Id. at 722-23.
However, that case is distinguished. The gun found in the instant 1987 Pontiac Grand Am was completely under the seat. Officer Theodos testified that the seat was low on the vehicle. Common knowledge instructs that the lower a car seat is to the floorboard, the further away one's feet are likely to be from the front flush portion of the seat.
Additionally, in State v. Heacox, supra, an undercover officer spotted a partially covered firearm on the seat of the vehicle between the defendant and the driver owner of the vehicle. The court stated that there was no evidence that defendant was aware of the gun's presence.
We are constrained to hold that this evidence, even when viewed in the light most favorable to the State, does not prove beyond a reasonable doubt that either Evans or Nora were aware that the gun was in the vehicle in which they were driving. Hence, both the possession and intent elements of the instant criminal offense, fail. See, supra n. 5.
It is interesting to note that in closing arguments, the prosecutor told the jury, over defendants' objection, that Evans and Nora were not required to know about the gun's presence in order to convict. This statement is clearly contrary to the law. State v. Woods, supra. The defendants also urge that the definition of general criminal intent used in the jury instructions was inadequate to cure this error. We do not, however, need to opine on those assignments of error, or any of the remaining assignments, because of our finding that the evidence was insufficient.

Decree
For the reasons enumerated above, we reverse the convictions and sentences of both defendants and order the defendants discharged.
CONVICTIONS AND SENTENCES REVERSED.
DEFENDANTS ORDERED DISCHARGED.
GASKINS, J., concurs in part, and dissents in part with reasons.
GASKINS, Judge, concurring in part and dissenting in part.
I concur that the convictions should be reversed, however, on a different basis than was espoused by the majority. The evidence, viewed in a light more favorable to the state, was sufficient to support a conviction against both defendants for felon with a firearm. However, this was a circumstantial evidence case based on constructive possession. The prosecutor made statements to the jury that indicated the defendants could be found guilty of the charge even though they had no knowledge of the gun's presence in the car. The jury charge did not sufficiently clarify this misstatement of the law. The combination of this constructive possession case proven by circumstantial evidence, along with the prosecutor's misleading statements to the jury which were not sufficiently corrected by the jury instructions, gives rise to reversible error in this case.
I respectfully dissent that the defendants be discharged, and would remand for retrial.
APPLICATION FOR REHEARING
Before MARVIN, C.J., and NORRIS, BROWN, STEWART and GASKINS, JJ.
Rehearing denied.
NOTES
[1] Brewster's testimony indicates that Evans was in the vehicle and Nora was either in the vehicle or just getting in the vehicle at the time Brewster stepped outside of the house to leave.
[2] The clerk testified that Nora approached him and asked to buy a pack of gum. The clerk testified that Nora gave him exact change for the purchase, twenty-seven cents. Nora testified that he gave the clerk thirty cents and told the clerk to keep the change.
[3] The conversation concerning the owner of the vehicle by Officer Theodos is unclear. According to the officer on direct examination, Evans gave two different names when prompted for the owner of the vehicle. On cross examination, the officer said "I don't know if he didn't know the person's name or what the problem was. But, he stated that a female had loaned him the car."
[4] However, see State v. Fisher, supra, finding that although defendant's sister owned the gun and stored it in her purse, the mere fact that defendant could have reached for the gun does not establish his dominion and control over the weapon.
[5] Awareness is one of those intangibles that seems to overlap into both the possession and intent elements of La. R.S. 14:95.1. However, a careful review of recent decisions on the offense of La. R.S. 14:95.1 indicates that awareness is used to prove "possession," although awareness must exist to have intent. See State v. Lewis, 535 So.2d 943 (La.App. 2d Cir.1988), writ denied, 538 So.2d 608 (1989), cert. denied, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1989); State v. Washington, 605 So.2d 720 (La.App. 2d Cir. 1992), writ denied, 610 So.2d 817 (1993); State v. Fisher, supra; State v. Heacox, 543 So.2d 101 (La.App. 3d Cir.1989); and State v. Woods, supra.
[6] Nora testified earlier that he only knew Evans for a short period of time before this event.