MADELEINE M. LANDRIEU, Judge.
|TThe defendant, David M. Beaulieu, Jr., appeals his conviction of attempted possession of a firearm by a convicted felon and his sentence. For the reasons that follow, we affirm the conviction and sentence.
STATEMENT OF THE CASE
On April 11, 2011, Mr. Beaulieu was charged by bill of information with possession of a firearm by a convicted felon in violation of La. R.S.14:95.1. The bill of information provides that the incident occurred on March 15, 2009, and that Mr. Beaulieu had been previously convicted of three felonies.[1]
*1053 Mr. Beaulieu was arraigned on April 27, 2011,[2] at which time he entered a plea of not guilty. On May 19, 2011, the State filed a notice of intent to use evidence of other crimes pursuant to La. C.E. art. 404(B). After conducting a |2Priem[3] hearing on June 20, 2011, the trial court granted the State’s motion, allowing the State to introduce evidence of Mr. Beau-lieu’s prior arrest for firearm possession on July 12, 2005, and his arrest for the same offense on June 28, 2009 (approximately three months after the charged offense).[4]
The matter was tried by a jury on November 14-17, 2011. After three days of trial, the jury found Mr. Beaulieu guilty of the lesser included offense of attempted possession of a firearm by a felon. Mr. Beaulieu was sentenced to seven years in the Department of Corrections, to run concurrently with any other sentences, with credit for time served.[5] Mr. Beaulieu now appeals his conviction and sentence.
STATEMENT OF FACT
Officer Michael Wynn testified as to the events that had led to Mr. Beaulieu’s March 25, 2009 arrest, the offense at issue in this case. Officer Wynn stated that in March of 2009 he was a member of the First District Task Force and had been working as a police officer for four years. On the day of the incident, Officer Wynn was conducting a proactive patrol with his partner, Officer Sherrita Bishop, in a marked police car when he observed a Nissan with a cracked windshield and an expired brake tag driving west on N. Miro Street. The officers 1 ^initially lost sight of the Nissan when it turned down a side street, but were able to find and stop the vehicle shortly thereafter. Officer Wynn approached the Nissan from the passenger side and motioned for Mr. Beaulieu, who was sitting in the front passenger seat, to roll down the window. However, because the car was turned off, Mr. Beaulieu opened the passenger door instead. As soon as Mr. Beaulieu opened the car door, Officer Wynn observed a “gun ... the grip and the rear slide of a gun protruding from between the driver’s side seat and the center console.” Specifically, the officer testified that the “entire handle and about three inches or so of the rear slide” of the gun were exposed and located directly behind a gear shift or emergency brake. Officer Wynn then informed his *1054 partner of the presence of the weapon and ordered the occupants out of the vehicle for officer safety. Officer Wynn later learned that the gun, a 9 millimeter Glock, was registered to the driver of the Nissan, Lerone Hines. However, after discovering Mr. Beaulieu had been previously convicted of a felony, “based on the location ... and visibility of the gun,” the officers placed him under arrest.
Officer Wynn testified that the visibility of the firearm led him to believe that Mr. Beaulieu had constructive possession of the weapon. He further stated that the firearm was a semi-automatic handgun comparable to the size and type of gun police officers carry.
14 Officer Joseph Pollard testified that Mr. Beaulieu’s fingerprints, name and date of birth matched those in the certified records of his three felony prior convictions in 1991,1995 and 1996, which records were introduced into evidence.
Detective Athena Monteleone testified regarding Mr. Beaulieu’s prior arrest on July 12, 2005. Det. Monteleone stated that on the night of July 12, 2005, she had been working for the First District Night Watch and had been setting up a perimeter in the 1900 block of St. Ann Street, where the Narcotics Unit had chased an armed felon. She testified that at approximately 4:05 a.m., she saw a vehicle driven by Mr. Beaulieu, approach the perimeter at the N. Prieur/St. Ann intersection.
Det. Monteleone testified that Mr. Beau-lieu slowed down when another officer attempted to get him to stop the car and turn around, but then he quickly accelerated towards the signaling officer, nearly hitting him. The vehicle then continued speeding down St. Ann towards Det. Mon-teleone’s direction. Det. Monteleone stated that she maintained her position, drew her weapon, and announced several times for Mr. Beaulieu to stop. When Mr. Beau-lieu was about fifteen feet from Det. Mon-teleone, Mr. Beaulieu swerved onto the sidewalk and crashed into the cement steps outside 1906 St. Ann. Det. Montel-eone and her partner, Officer Corey Keaton, then gave several verbal commands for Mr. Beaulieu to show his hands. Det. Monteleone testified that Mr. Beaulieu looked frantic, but after several officers had surrounded the vehicle, Mr. Beaulieu opened the vehicle door. The officers continued to order Mr. Beaulieu to show his hands. | ¡As Mr. Beaulieu exited the car, Det. Monteleone observed Mr. Beaulieu drop a “fully automatic Uzi” from his right hand. Det. Monteleone then handcuffed Mr. Beaulieu, and Officer Keaton retrieved the gun. Det. Monteleone testified that the gun contained seventeen rounds of ammunition, including one round in the chamber. A search incidental to Mr. Beaulieu’s arrest revealed a camouflage ski mask in Mr. Beaulieu’s front right pocket. After running Mr. Beaulieu’s name in the computer, the officers discovered he was on probation or parole for possession with the intent to distribute.
Det. Monteleone stated that neither the firearm nor the ski mask was present in the courtroom because most of the evidence had been destroyed during Hurricane Katrina.[6] She also testified that gun had not been submitted to the crime lab for testing.
Officer Nicholas Morrell of the Special Operations Division testified with regard *1055 to arrest of Mr. Beaulieu on June 28, 2009, approximately three months after the offense at issue. Officer Morrell stated that on the night of June 28, 2009, he and his partner, Officer Stephanie Caldwell, were patrolling the First District in a marked police unit when he observed Mr. Beaulieu, in a black SUV, driving the wrong way down N. Rocheblave Street, a one-way street. The officers u-turned, activated their police lights and sirens, and pulled Mr. Beaulieu over. After stopping Mr. Beaulieu, the officers activated their spotlight to illuminate the inside |fiof the vehicle, and Officer Morrell instructed Mr. Beaulieu over the speaker to roll down his window. The officers exited the police unit and began walking towards Mr. Beau-lieu’s vehicle — Officer Morrell approached from the driver’s side, and Officer Caldwell approached from the passenger side. Upon approaching the vehicle, Officer Morrell noticed a small child in the backseat. Officer Caldwell then alerted Officer Morrell that there was a gun in the vehicle. Mr. Beaulieu was then ordered out of the car, and Officer Caldwell retrieved the gun. Officer Morrell testified that the gun was tucked between the car console and the passenger seat, “sticking up with the handle above the seat.” After a computer search revealed that Mr. Beaulieu was on probation for distribution and another weapons charge, the officers arrested him for being a felon in possession of a firearm. The officers also learned that the gun found in vehicle was registered to Lerone Hines.[7] Mr. Hines, however, was not in the vehicle at the time.
Officer Morrell stated that he had testified at Mr. Beaulieu’s trial of the possession charge stemming from the June 28, 2009 incident. The docket master of that case (No. 496-388), showing that Mr. Beaulieu was found not guilty by the jury on April 7, 2011, was introduced into evidence.
Lerone Hines, the driver of the Nissan from the March 2009 incident, testified for the defendant. He stated that he had known Mr. Beaulieu for approximately ten years and grew up with him at the Lafitte Housing Development. He testified that he owns a 9 millimeter Glock and has a concealed [7weapon permit.[8] Mr. Hines testified that on March 15, 2009, the day of the instant offense, he and Mr.' Beaulieu had planned to take their kids to Harahan Kids Sports. After picking up Mr. Beau-lieu from his home on D’Abadie Street, Mr. Hines proceeded on his way to his destination until a police car pulled him over at Johnson and Orleans Avenue. A female officer then approached his side of the car and asked him to step out of the vehicle. Mr. Hines testified that upon exiting the vehicle, he told the officers that he had a firearm in the car. Thereafter, he and Mr. Beaulieu were relocated to back of the vehicle. Mr. Hines informed the officers that the gun was between the seats. Mr. Hines testified that after the officers retrieved the firearm, they told him they had pulled him over due to an expired brake tag. He was subsequently arrested for outstanding traffic attachments, and Mr. Beaulieu was arrested for being a felon in possession of a firearm.
Mr. Hines stated that he normally takes his firearm with him in his car and keeps it between the driver’s seat and the car eon- *1056 sole. He said that on the day of the instant offense, the gun was wedged in such a fashion that only the top part of the handle was visible. He testified that the gun was closer to him than it was to Mr. Beaulieu, and that Mr. Beaulieu had no knowledge that the gun was in the car. Mr. Hines stated that he had previously testified on behalf of Mr. Beaulieu in the jury trial stemming from Mr. Beaulieu’s June 28, 2009 arrest, and that Mr. Beau-lieu had been found not guilty of that offense. Mr. Hines admitted he had not been present at the time of that arrest, but acknowledged that the gun discovered in the car (SUV) with Mr. Beaulieu on June 28, 2009, was the same gun involved in |Rthe instant offense. Mr. Hines explained that he had been a passenger in the SUV earlier in the evening on June 28, 2009, and he had left his gun in the vehicle. He stated that the driver of the SUV at that time was Cedric Myer, a friend of his. Mr. Hines stated that later on that same night, he and a few people, including Mr. Beaulieu and his son, were watching the BET awards at his house when Mr. Beau-lieu borrowed the SUV to go to the store and was subsequently arrested.
According to Mr. Hines, he did not know that Mr. Beaulieu was a convicted felon until March of 2009 and was unaware that Mr. Beaulieu had been arrested in 2005 for possession of an Uzi. Mr. Hines stated that despite his having known Mr. Beaulieu for over ten years, he had never informed Mr. Beaulieu that he (Mr. Hines) carried a weapon or had a concealed weapon permit.
Mr. Beaulieu testified that he has two kids, a seventeen-year-old daughter and a seven-year-old son. He admitted that he pled guilty to the felony charges of possession of an unregistered firearm in 1991 and illegal carrying of a weapon in 1995. He testified that he was sentenced to probation for each of those convictions, and that in each case the probation was terminated by the court on account of his being arrested for other offenses. Mr. Beaulieu also stated that he was convicted of possession with intent to distribute cocaine in 1996, for which he received a fifteen-year sentence. He served eight and a half years of that sentence and was released in 2003. Mr. Beaulieu stated that the charges related to the instant offense (March 15, 2009) had been previously dismissed by the State in an earlier case after the preliminary hearing. He testified that after he was acquitted 1 nof the subsequent (June 28, 2009) offense in April of 2011, the State reinstituted the charges against him from his March 15, 2009 arrest.
Mr. Beaulieu testified that on the night of June 28, 2009, his son’s mother had dropped him and his son off at Mr. Hines’ home to watch the BET awards. He said he had asked to borrow his friend’s SUV to go to the store to get some toiletries. Mr. Beaulieu stated that he does not have a car and frequently gets rides from friends. He testified that he did not look between the console and the seat the night of June 28, 2009.
Mr. Beaulieu testified that on March 15, 2009, the date of the charged offense, he and Mr. Hines had planned on getting together to do an activity with their sons. He stated after Mr. Hines picked him up from his house, they were headed to Mr. Hines’ son’s home on Dryades Street. Mr. Beaulieu testified that they were driving down N. Johnson Street, and right before they turned onto Orleans Avenue, the police pulled up behind them. The officers exited the police unit and demanded that he and Mr. Hines show their hands. Mr. Beaulieu stated that he opened the car door because he could not roll down the window. He said that while he was talking to Officer Wynn, he heard Mr. Hines tell the other officer that there was a gun in *1057 the car. Mr. Beaulieu stated that prior to that time, he was unaware of the presence of a gun. Mr. Beaulieu said he then informed Officer Wynn that he had just been released from jail and was on parole until 2010. As Mr. Beaulieu was being handcuffed, he told Officer Wynn that he did not know | inthere was a weapon in the car, but the officer responded that he still had to arrest him.
Mr. Beaulieu stated that he had started carrying weapons when he was seventeen-years-old for protection. He denied that his carrying of weapons had to do with any involvement in drug dealing. Regarding his 2005 arrest, Mr. Beaulieu stated that he was driving a friend’s car that night and was not aware that the Uzi was in the car. He testified that he spent time with Mr. Hines about once a week and sometimes drove with him, but never saw or knew that Mr. Hines carried a gun. Mr. Beau-lieu stated that on the date of the charged offense, it did not occur to him to look for a weapon in his friend’s car, despite his having been previously arrested for possession of firearms while borrowing other people’s cars.
ERRORS PATENT
A review of the record for errors patent reveals that the trial court imposed an illegally lenient sentence by failing to specify that Mr. Beaulieu’s sentence be served without benefit of probation, parole, or suspension of sentence. At the time Mr. Beaulieu committed the offense, La. R.S. 14:95.1(B), relative to possession of a firearm by a convicted felon, provided:
Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. [Emphasis added].
The attempt statute, La. R.S. 14:27(D)(3), provided that whoever attempts to commit a crime shall be punished by fine or imprisonment, or both, “in the same |^manner as for the offense attempted” and that “such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense attempted, or both[.]” (Emphasis added).
In State ex rel. Sullivan v. Maggio, 432 So.2d 854, 857 (La.1983), the Louisiana Supreme Court analyzed the “in the same manner” phrase provided in La. R.S. 14:27(B)(3), relative to an attempted armed robbery offense. The statute pertaining to armed robbery, like the one pertaining to the instant crime, mandated the statutory restrictions as to probation, parole, and suspension. The Supreme Court held: “[a] realistic and genuine construction of the two provisions requires that persons who attempt armed robbery shall be punished at hard labor without benefit of parole, probation or suspension of sentence.” Id.
Similarly, a “realistic and genuine construction” of the two articles in the present case, La. R.S. 14:95.1(B) and La. R.S. 14:27(D)(3), requires a person convicted of attempted possession of a firearm by a convicted felon to be imprisoned without benefit of probation, parole, or suspension of sentence. In fact, both the Third and Fifth Circuits have applied the Louisiana Supreme Court’s reasoning in Maggio to the crime of attempted possession of a firearm by a convicted felon. See, State v. Everett, 2005-214, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 1210, 1212; State v. Smith, 2008-528, pp. 4-5 (La.App. 5 Cir. 1/13/09), 1 So.3d 802, 803-804. Therefore the trial court erred by failing to impose *1058 these sentencing restrictions upon Mr. Beaulieu.
11gHowever, when a criminal statute requires that all or a portion of a sentence be served without the benefit of probation, parole, or suspension of sentence, La. R.S. 15:301.1 self-activates the correction and eliminates the need to remand for a ministerial correction. La. R.S. 15:301.1(A);[9] State v. Williams, 2000-1725, pp. 11-12, 14 (La.11/28/01), 800 So.2d 790, 798-799, 801.[10] Thus, no corrective action is necessary.
ASSIGNMENTS OF ERROR
Mr. Beaulieu raises two assignments of error:
1. There was insufficient evidence to support his conviction; and
2. The trial court erred by allowing the introduction of evidence of other offenses of which Mr. Beaulieu had been acquitted.
DISCUSSION
I. Sufficiency of the Evidence
Mr. Beaulieu contends that there was insufficient evidence for the jury to convict him of possession of a firearm by a convicted felon.
11sThis Court in State v. McMillian, 2010-0812, p. 5-8 (La.App. 4 Cir. 5/18/11), 65 So.3d 801, 804-805, reh’g denied (7/13/11), set out the well-settled standard for reviewing convictions for sufficiency of the evidence:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d at 1309-1310. “[A] re *1059 viewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. The determination of 114whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia; State v. Huizar.[11]
Mr. Beaulieu was charged with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1(A), and the jury returned a verdict of attempted possession of a firearm by a convicted felon, a legislatively provided responsive verdict to the charged offense. La.C.Cr.P. art. 815; La. R.S. 14:27(C). Where a defendant is charged with a crime, and the jury returns a responsive verdict, the evidence is sufficient to support the responsive verdict if it is sufficient to support the crime as charged, as long as the defendant did not object to the inclusion of this lesser included offense. State v. Schrader, 518 So.2d 1024, 1034 (La.1988); State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982); State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99; State v. Johnson, 2011-1343, p. 4 (La.App. 4 Cir. 6/13/12) (unpub.), writ denied, 2012-1499 (La.1/18/13), 107 So.3d 625. The record does not reveal any objection by Mr. Beau-lieu to the inclusion of the responsive verdict prior to the jury rendering its verdict. Therefore, we must consider whether the evidence was sufficient to support the offense of possession of a firearm by a convicted felon.[12]
*1060 115At the time of the instant offense, La. R.S. 14:95.1 provided in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2 which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary, manufacture of possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.
[[Image here]]
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:
(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
Thus, to convict Mr. Beaulieu of possession of a firearm by a convicted felon, the State must prove: possession of a firearm; conviction of an enumerated felony; absence of the ten-year statutory period of limitation; and general intent to commit the offense.[13] La. R.S. 14:95.1; State v. Husband, 437 So.2d 269, 271 (La.1983); State v. Ball, 99-0428, p. 3 (La.11/30/99), 756 So.2d 275, 277. “[Bjecause [a]n essential element of the crime defined in [La. R.S. 14:95.1] is the defendant’s |1fiprior conviction for one of the enumerated felonies,’ the [S]tate may introduce evidence of [Mr. Beaulieu’s] previous felony convictions as proof of an element of the crime charged and the manner in which the present offense was committed.” Ball, 99-0428, p. 3, 756 So.2d at 277 (quoting State v. Sanders, 357 So.2d 492, 494 (La.1978)).
In the instant case, Mr. Beaulieu’s prior felony convictions and the absence of the ten-year period of limitation are not in *1061 dispute.[14] The controverted issue is whether Mr. Beaulieu had possession of the firearm and whether he had the requisite intent to possess the weapon.
Mr. Beaulieu argues that that State submitted no evidence that he had the specific intent to possess the gun. However, as noted above, possession of a firearm by a convicted felon requires only that a defendant have the general intent to possess the weapon. State v. Jones, 539 So.2d 866, 868 (La.App. 4 Cir.1989).
General intent is present “when the circumstances indicate that the defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” La. R.S. 14:10(2). The element of possession is satisfied by establishing the defendant had either actual or constructive possession. State v. Major, 2008-0861, p. 6 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 720. Constructive possession exists if a defendant has dominion and control over a weapon even if it is only temporary in nature and even if the control is shared. State v. Johnson, 2003-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998; Major, 2008-0861, p. 6, 1 So.3d at 720. However, the “mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession.” State v. Clements, 2012-1132, pp. 5-6 (La.App. 4 Cir. 3/13/13), 112 So.3d 306, 311 (quoting Johnson, 2003-1228 at p. 6, 870 So.2d at 999).
The State must prove that the defendant was aware that a firearm was in his presence and that he had the general intent to possess the weapon. Id., p. 6, 112 So.3d at 311 (citing Johnson, 2003-1228 at p. 5, 870 So.2d at 998). Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Id. (citing Johnson, 2003-1228 at p. 5, 870 So.2d at 998). Whether the proof is sufficient to establish possession turns on the facts of each case. Id. (citing State v. Harris, 94-0970, pp. 3-4 (La.12/8/94), 647 So.2d 337, 338-339; State v. Bell, 566 So.2d 959, 959-960 (La.1990)). The defendant’s awareness is a factor that overlaps both of these elements — possession and intent. Major, 2008-0861, p. 6, 1 So.3d at 720 (citing State v. Evans, 29,675, p. 8, n. 5 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, 1043). “[A] careful review of recent decisions on the offense of La. R.S. 14:95.1 indicates that awareness is used to prove “possession,” although awareness must exist to have intent.” Id.
Here, there is sufficient evidence in the record to support Mr. Beaulieu’s conviction. Officer Wynn testified when the Nissan’s passenger door was opened, he immediately observed the entire gun handle and a few inches of the rear slide of 11sthe gun “protruding” between the driver’s seat and the car’s center console. Both Mr. Beaulieu and the driver, Mr. Hines, stated that Mr. Beaulieu was not aware that the firearm was in the car. However, in addition to Officer Wynn’s testimony concerning the visibility of the gun and its proximity to Mr. Beaulieu, the jury heard testimony by Officer Morrell stating that three months after the charged offense, Mr. Beaulieu was arrest *1062 ed again, in a different car, for being in possession of the same gun registered to Mr. Hines. Just as in the March incident, the gun found with Mr. Beaulieu in the June incident was located between a car seat and the console with the handle of the gun “sticking up” above the seat.[15] Mr. Beaulieu also had been arrested in July of 2005 for possession of a firearm. In all three situations, Mr. Beaulieu was in another person’s car and claimed he had no knowledge that a firearm was located therein. Mr. Beaulieu testified that despite his having been arrested in July of 2005 and March of 2009 for being in possession of a gun in a friend’s car and his knowledge that it would be a violation of his parole for him to be in the presence of a firearm, it never occurred to him to look for a gun in June of 2009 when he borrowed his friend’s vehicle. This testimony seems suspect in light of Mr. Hines’ testimony that he had carried a gun for several years, regularly took it with him in the car and kept it between the console and the car seat, and that Mr. Beaulieu was his longtime friend who sometimes rode with him.
11flThe jury could reasonably have found, based on the Officer Wynn’s testimony, that the gun in the charged offense was in plain view of Mr. Beaulieu, and that he was aware of its presence. It was also within the jury’s authority to reject, as the jury apparently did, Mr. Beaulieu’s and Mr. Hines’ testimony indicating that Mr. Beaulieu was unaware of the gun’s existence.
The facts adduced at trial are sufficient for a rational juror to conclude that Mr. Beaulieu had constructive possession of the weapon at the same time that Mr. Hines did. Moreover, the jury could infer from the circumstances that Mr. Beaulieu had the general intent to possess the firearm in the instant case due to its similarity to the June 2009 incident, as Mr. Beaulieu was aware that it was a violation of the conditions of his parole to be around guns, but was discovered again months after the charged offense with the exact same gun tucked between the seat and console of a different car.[16]
Accordingly, taking into account Officer Wynn’s testimony regarding the location and visibility of the gun, Mr. Beaulieu’s proximity to the weapon, and the pattern of events, we conclude that the record contains sufficient evidence from which a rational juror could find that Mr. Beaulieu had constructive possession of the firearm and the general intent to possess it. See, State v. Allen, 2012-412, pp. 1-4 (La.10/26/12), 101 So.3d 41, 42-44, (finding that the evidence was sufficient to convict the defendant of possession of a firearm by a convicted felon where the weapon was found under the backseat of the vehicle that the defendant was |2ndriving, despite testimony from the defendant’s girlfriend that she owned the vehicle and the weapon, and that she had placed the weapon under the backseat cushion without the defendant’s knowledge).
II. Evidence of Other Crimes/Offenses
Mr. Beaulieu argues that the trial court erred in allowing the introduction of evidence of other offenses for which he had been acquitted because their prejudicial impact outweighed any probative value. Mr. Beaulieu further claims that the sole *1063 purpose of the State’s offering of the July-2005 arrest and June 2009 arrest was to attempt to convince the jury that he had a propensity for bad behavior and had acted in conformity with his bad character.
Evidence of other crimes or bad acts committed by a criminal defendant is generally not admissible at trial to show that he is a person of bad character. La. C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, under Article 404 of the Code of Evidence, the State may introduce evidence of other crimes, wrongs or acts if the State establishes an independent and relevant reason for its admissibility, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id.
La. C.E. art. 404(B)(1) provides:
Except as provided in Article 412 [regarding a victim’s past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for |21such purposes, or when it relates to the conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The evidence must also tend to prove a material fact at issue or to rebut a defendant’s defense. State v. Henderson, 2012-2422, pp. 1-2 (La.1/4/13), 107 So.3d 566, 567. The State bears the burden of proving that the defendant committed the other crimes, wrongs or acts. Id. at p. 2, 107 So.3d at 567.
Even when the other crimes evidence is relevant and offered for a purpose allowed under La. C.E. art. 404(B), the court must still balance the probative value of the other crimes, wrongs or acts evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. The probative value of the extraneous crimes evidence must outweigh any prejudicial effect, including unfair prejudice, confusion of the issues, or misleading of the jury, or considerations of undue delay, or waste of time. Henderson, 2012-2422, p. 2, 107 So.3d at 567-568. Furthermore, the requirements set forth by the Louisiana Supreme Court in Prieur must be met. Under Prieur, 277 So.2d at 130, the State must: provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail, within a reasonable time before trial; show that the evidence is neither repetitive nor cumulative, and is not being introduced to show that the defendant is of bad character; and at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. Id. The trial court must also charge the jury at the close of the trial that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted ofj^any crime other than the one charged or any offense responsive to it. Id.; see also, State v. Miller, 98-0301, pp. 3-4 (La.9/9/98), 718 So.2d 960, 962.
Here, in the State’s written Prieur notice, it averred that the circumstances surrounding Mr. Beaulieu’s July 12, 2005 arrest and June 28, 2009 arrest would be introduced “to prove motive, intent, preparation, plan, identity, and absence of mistake or accident,” all purposes for which other crimes evidence may be relevant. *1064 The written notice set out the purported basic facts of each offense. The State argued in the motion that in all three cases, the defendant was apprehended pursuant to a traffic stop; he displayed erratic behavior in an attempt to avoid the police or conceal the weapon; and he was found to be in possession of a semi-automatic handgun.
At the hearing, the State narrowed the focus of the Prieur evidence, claiming that it had “to prove to the Court that [Mr. Beaulieu] has some sort of pattern that he uses [sic] in the same manner.” The State then set forth the alleged similarities between the offenses as they were described in the written Prieur notice.
We address the admission of each offense separately.

The June 28, 2009 Arrest

We note that, despite the State’s assertions, the testimony of the police officers indicates that the June 2009 incident did not involve erratic behavior on the part of Mr. Beaulieu or a purposeful attempt to evade the police. The State argues on appeal that this incident was offered to prove that Mr. Beaulieu knew of the existence of the weapon and intended to possess it, as well as to show his 1 ^repetitive involvement in the same kind of criminal activity. Because the June 2009 incident involved the same gun as the instant one, we agree that it is relevant to refute Mr. Beaulieu’s defense and to establish Mr. Beaulieu’s knowledge of the presence of the weapon in the vehicle. Moreover, the fact that the June 2009 incident involved Mr. Beaulieu’s alleged possession of this same gun, which was registered to Mr. Hines, in a different car, is sufficiently probative to outweigh any prejudice engendered by the admission of this evidence. We therefore find the trial court did not err by admitting this evidence.

The 2005 Incident

The 2005 offense differs from the charged offense and from Mr. Beau-lieu’s arrest in June of 2009 because it is the only incident in which Mr. Beaulieu was observed to be in physical possession of a firearm. Despite the State’s assertions to the contrary, it is also the only incident that involved evidence of erratic behavior and an attempt to evade the police by Mr. Beaulieu. Therefore, the facts of the 2005 incident are not nearly as similar to those of the charged offense as are the facts of the June 2009 incident. This lack of similarity, coupled with the lapse of time between the two incidents, lessens the probative value of the 2005 arrest.[17]
Nevertheless, even if we were to conclude that the trial court erred by admitting the 2005 incident into evidence, we would find that error to be harmless.[18] The erroneous admission of other crimes evidence is subject to ^harmless error analysis. State v. Bell, 99-3278, p. 5 (La.12/8/00), 776 So.2d 418, 421. When performing a harmless error analysis, the reviewing court must determine “whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction,” and “the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.” Chapman v. California, 386 U.S. *1065 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Bell, 99-3278, p. 5, 776 So.2d at 421. The inquiry “is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely attributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); Bell, 99-3278, p. 6, 776 So.2d at 421-422; State v. Barnes, 2001-0113, pp. 10-11 (La.App. 4 Cir. 11/7/01), 800 So.2d 1124, 1131.
In the present case, Mr. Beau-lieu’s conviction is not surely attributable to the 2005 incident. The jury heard testimony from Officer Wynn that the weapon which Mr. Beaulieu is currently charged possessing was in plain view and was easily within Mr. Beaulieu’s reach. Further, the evidence demonstrated that Mr. Beau-lieu frequently spent time with and sometimes rode with Mr. Hines, and that Mr. Hines regularly brought his weapon in the car with him. Additionally, the weapon involved in the June 2009 offense was the same involved in the instant case, and was registered to Mr. Hines, stored in a similar manner, and located in )2sclose proximity to Mr. Beaulieu.[19] Based on this evidence, a rational jury could have concluded that Mr. Beaulieu had the requisite knowledge and intent to possess the weapon seized in the charged offense. Moreover, the trial court charged the jury prior to deliberations that “other crimes” evidence serves a limited purpose and that Mr. Beaulieu could not be convicted for any crime other than the one charged or any offense responsive thereto.
We therefore find no merit to Mr. Beau-lieu’s second assignment of error.

CONCLUSION

For the reasons stated, we affirm Mr. Beaulieu’s conviction and sentence.
AFFIRMED

. According to the bill, those convictions were: possession of unregistered weapons in Case No. 352-417 (1991); illegal carrying of a weapon, second offense, in Case No. 378-086 *1053 (1995); and possession with the intent to distribute cocaine in Case No. 378-852 (1996).

. Mr. Beaulieu had been previously arraigned for the same March 15, 2009 offense in Case No. 485-060, assigned to Section B, but the State had dismissed the charges after a trial court finding of no probable cause. The State then reinstated those charges after Mr. Beau-lieu was arrested in June, 2009 for possession of the same weapon. The matter was originally assigned to Section C but was transferred to Section B on April 14, 2011, when the defendant appeared for arraignment.

. State v. Prieur, 277 So.2d 126, 130 (La.1973), is the seminal Louisiana case involving the use of other crimes evidence at a trial. The purpose of a Prieur hearing is to offer the defendant an opportunity to defend against the admission of "other crimes” evidence. State v. Gibson, 511 So.2d 799, 802 (La.App. 4 Cir. 1987).

. Mr. Beaulieu sought supervisory review of the trial court's ruling with this Court on June 27, 2011. This Court denied the writ on August 19, 2011, stating: "[w]e decline to exercise our supervisory jurisdiction because of the paucity of factual information provided regarding the offense (an alleged violation of La. R.S. 14:95.1) of which the defendant/relator is presently accused. The defendant/relator has an adequate remedy on appeal in event of his conviction.” 2011-0847 (La. App 4 Cir. 8/19/11) (unpublished).

. The trial court also ordered Mr. Beaulieu to pay $500.00 to the Judicial Expense Fund and $191.50 in court costs.

. Det. Monteleone could not say if the ski mask had been available or used at the trial of the defendant for the July 2005 offense, but she stated that the gun, although rusted, was present at that trial. The docket master of the Orleans Parish Sheriff's Office provides that the July 12, 2005 offense was prosecuted in Case No. 462-009, Section B, and that the jury found the defendant not guilty on August 29, 2006.

. In Officer Morrell's testimony, he indicated that the black SUV was also registered to Hines, but the record provides Hines was not the owner. Hines and the defendant both testified that the SUV belonged to or at least was driven by their friend Cedric Myer.

. The permit and a receipt from Elliot’s Gun-shop evidencing the gun’s purchase were introduced into the evidence.

. La. R.S. 15:301.1(A) provides:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence

. In Williams, p. 10, 800 So.2d at 799 the Louisiana Supreme Court stated that in instances where the restrictions are not recited at sentencing, La. R.S. 15:301.1(A) "deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court.” La. R.S. 15:301.1(A) self-activates the correction and eliminates the need to remand for a ministerial correction. Id.

. In State v. Sparkman, 2008-0472, pp. 6-7 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 895, this court noted that the Jackson standard is legislatively embodied in La. C. Cr. P. art. 821(B), which provides that a "post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."

. Significantly, the charged offense is a general intent crime; whereas, attempted posses *1060 sion of a firearm by a convicted felon would require proof that defendant had the specific intent to possess the weapon and that he committed an overt act towards, the completion of that offense. See, La. R.S. 14:27 (defining the crime of attempt as occurring when an individual, "having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object ...; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose”); La. R.S. 14:10(1) (specific intent is the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed consequences to follow his act or failure to act).

. General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). General criminal intent need not be proven as a fact, but may be inferred from the circumstances of the case. State v. Smith, 98-0366, p. 7 (La.App. 4 Cir. 5/12/99), 744 So.2d 73, 77. The very doing of the acts that have been declared criminal shows general criminal intent necessary to sustain a conviction. Id.

. Mr. Beaulieu testified that he had been released from prison in 2003 after serving eight and one-half years for his 1996 conviction. The "cleansing period” provided for in La. R.S. 14:95.1 C(l) is "ten years from the date of completion of sentence, probation, parole or suspension of sentence.”

. In March 2009, the gun was between the driver’s seat and the center console; however, in June 2009, the gun was located between the passenger’s seat and the car console.

. See, Smith, 98-0366, p. 7, 744 So.2d at 77 (the very doing of the acts that have been declared criminal shows general criminal intent necessary to sustain a conviction).

. Although generally a lapse in time will go to the weight of the evidence, rather than to its admissibility, remoteness in time is one of the factors that should be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. See, State v. Jackson, 625 So.2d 146, 150-152 (La.1993).

. We therefore pretermit the issue of the admissibility of the 2005 offense.

. The defendant also mentions in his brief that it was error for the trial court to allow the June 2009 offense to establish intent because it was committed after the charged offense. However, it is well recognized that when evidence of other crimes is admissible to show intent, knowledge, or absence of mistake under the Code of Evidence, it is immaterial whether such offenses occurred subsequently or prior to the date of the offense charged, provided the evidence of such offense is relevant and material and has some connection with the issue before the judge or the jury. State v. Johnson, 228 La. 317, 333, 82 So.2d 24, 29 (1955); State v. Kreller, 255 La. 982, 999, 233 So.2d 906, 912 (1970).