DENNIS R. BAGNERIS, SR., Judge.
laPefendant, Joseph Scott, appeals his conviction and sentence for possession of a firearm by a convicted felon and his adjudication as a third multiple offender. Finding that the evidence was insufficient to convict, we reverse defendant’s conviction and sentence.
STATEMENT OF THE CASE
Defendant, Joseph Scott, was charged by bill of information on May 9, 2012, with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. He pled not guilty. Thereafter, the trial court denied defendant’s motion to suppress the evidence. The defendant proceeded to trial before a twelve-person jury on October 3, 2012; he was found guilty as charged. The trial court denied defendant’s motion for new trial on November 30, 2012. On December 5, 2012, the trial court sentenced defendant to ten years at hard labor, without benefit of parole, probation, or suspension of sentence. On the same date, the trial court adjudicated defendant a third-felony habitual offender, vacated the original sentence imposed, and resen-tenced defendant to twenty years at hard labor, without the benefit of probation or suspension of sentence.
The present appeal followed.

*386
FACTSIPROCEDURAL HISTORY

The following testimony was adduced at trial.
Amanda Prudhomme testified that she was defendant’s parole officer based on a Texas conviction. Officer Prudhomme advised that parolees cannot engage in criminal activity or be arrested; additionally, they cannot own, possess, or have access to a firearm.
On April 11, 2012, she went to the address defendant had identified as his residence to conduct a residence check. When she entered the residence, she ^smelled what she believed was the odor of burnt marijuana. The defendant identified the master bedroom as his room. Officer Prudhomme then scheduled an appointment to see him the next business day and left. She reported her observations to her supervisor. The supervisor directed her to conduct a search of the residence and to obtain back-up assistance. Approximately thirty to forty minutes later, Officer Justin Edgecombe arrived to assist her.
Officer Edgecombe and Officer Prud-homme returned to the residence to conduct the search. Officer Prudhomme said she found a hollowed out cigar in an ashtray in the master bedroom and saw what seemed to be a marijuana stem in the toilet. Officer Prudhomme acknowledged, however, that she did not retrieve any marijuana. Officer Prudhomme stated that it was Officer Edgecombe that discovered the ammunition and the gun. She did not know if any fingerprints or DNA were found on the gun. Officer Prud-homme also did not recall if the clothing she saw was men’s or women’s clothing.
Officer Edgecombe testified that the defendant and his “wife” were present when Officer Prudhomme and he entered the residence. Officer Edgecombe also said he smelled marijuana inside the residence. Officer Edgecombe advised that Officer Prudhomme stayed with the defendant and his “wife” in the living room, while he searched the remaining parts of the residence. He found a purse underneath the bed which contained a single bullet. Officer Edgecombe searched the closet, which was beyond the master bathroom. The master bedroom provided the only access to the closet. He saw clothes everywhere; however, the officer could not say if the clothes were men’s or women’s clothing. Officer Edgecombe discovered a box of ammunition and a magazine on a shelf underneath some clothing. He notified Officer Prudhomme of his findings. When the defendant and |4his “wife” were then asked if there were any guns in the house, both denied that there were any.
Officer Edgecombe continued his search. On another shelf in the closet, he picked up a heavy purse. Upon opening, he discovered a pistol that was wrapped in crumbled paper. He acknowledged on cross-examination that he did not know who owned the gun and did not know whether DNA evidence or fingerprints were ever taken from the gun.
Valerie Taylor, the person identified by the officers as defendant’s wife, testified that she had known defendant for almost twenty-three years. He was the father of one of her children. He would stay with her off and on when he was not incarcerated. She said the residence where the gun was found was leased solely to her. She had been living there approximately two years. She testified that she owned the gun found by Officer Edgecombe. She purchased it on March 20, 2011 at Academy Sports, a year or so before defendant’s arrest for gun possession. She identified receipts which showed she had purchased the gun. She said she purchased the gun because someone had once pulled an assault weapon on Ms. Taylor and her *387 daughter and that her home had been burglarized.
Ms. Taylor stated that defendant came to live with her on March 8, 2012, about a month before his arrest for gun possession. She said defendant had been working and drove a dump truck for a construction company. Ms. Taylor acknowledged that the defendant and she shared a bedroom; however, she clarified that they did not share a closet. She maintained that the defendant kept his clothes in the computer closet and that he showed Officer Prudhomme that his clothes were kept in the computer closet.
|fiMs. Taylor claimed that the gun had only been at her residence approximately four days before Officer Edgecombe found it. Previously, the gun had been at her mother’s residence. She admitted that she lied to Officer Prudhomme when the officer initially asked her if she had a gun in the residence. She said she lied because she knew defendant was not supposed to “be around” a firearm. She said she had told defendant that she had purchased the gun while he was still incarcerated in Texas. She maintained that he had been opposed to the purchase.
Ms. Taylor said the gun Officer Edge-combe ultimately found was in a new, unused purse in her closet. Ms. Taylor maintained that on April 11, 2012, defendant knew nothing about the gun being in the house. She said they had not had a conversation about the gun after he came to live there, but had one before, while he was in prison in Texas. She claimed that when defendant had asked her what she had done with the gun, she told him that the gun was at her mother’s. Ms. Taylor stressed that neither defendant nor her children knew anything about the gun being in the house. She testified that he did not tell her what to do with the gun and did not tell her to hide the gun in the purse.
Defendant testified that Ms. Taylor became his common law wife while he was in prison in Texas. He said he had known her for twenty-three or twenty-four years. He confirmed that they had a child together. He said that while he was in prison, she told him she was buying a firearm, and he told her he could not “be around” a firearm. He testified that before he came to live with Ms. Taylor, she told him that she had put the firearm in her mother’s residence. Defendant claimed that he did not know the gun was in the residence on the date of the arrest.
IfiDon Hancock, the telephone supervisor for the Orleans Parish Sheriffs Office, testified for the State on rebuttal. Mr. Hancock testified that all inmate calls are recorded and are stored electronically.
Mr. Hancock identified a CD that contained four telephone calls the defendant made to telephone number 418-6909 on April 11, 2012. The calls were all from the same caller, “Joseph” to the same unidentified female caller. They were made on April 11, 2012, the evening of defendant’s arrest.
The State played an excerpt of these calls to the jury. Defense counsel objected; however, he was overruled. In the portion played to the jury, the defendant chided Ms. Taylor about the gun, admonishing her that he had previously warned her that he could not be around any guns. Ms. Taylor responded: “Yeah, but you told me to put it in the purse and wrap it up. You told me that.” The defendant then reiterated, “Yeah, but I’m just saying, you knew I couldn’t be around [a gun (inaudible) ].”
At the conclusion of the trial, the jury voted 11-1 to find the defendant guilty as charged. Thereafter, the trial court adju *388 dicated defendant to be a third felony offender and sentenced him to twenty years in prison. This appeal follows.

DISCUSSION/ASSIGNMENTS OF ERROR

Defendant’s counseled and pro se assignments of error maintain that:
1) The evidence is insufficient to sustain defendant’s conviction, specifically to prove that he intended to possess a firearm;
2) The trial court erred in admitting a record call defendant made while in Orleans Parish Prison;
3) Ineffective assistance of counsel;
4) The trial court erred in holding defendant in contempt of court;
The trial court erred in denying defendant’s motion to quash the habitual offender bill of information;
6) The trial court erred in finding that probable cause existed for his arrest based upon an illegal search and seizure;
7) The trial court erred in denying defendant’s motion to inspect, examine, fingerprint and test physical evidence, and in allowing the State to refer to impermissible and prejudicial evidence in its closing argument without advising the defense in writing prior to trial; and
8) The trial court erred in not granting defense counsel’s oral motion for a mistrial.
9) Defendant’s multiple offender adjudication must be reversed on error patent review because the State relied on improper predicate offenses to obtain the adjudication.
We first consider plaintiffs claim that the evidence was insufficient to convict.
This Court set forth the applicable standard of review for sufficiency of the evidence in State v. Huckabay, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be 1 ¿impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[Ajreviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate *389 test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Huckabay, 2000-1082, p. 32, 809 So.2d at 1111, quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107.
With reference to the present offense, La. R.S. 14:95.1 states, in pertinent part, that “[i]t shall be unlawful for any person who has been convicted [of an enumerated felony] to possess a firearm.” In order to convict for possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant: (1) possessed a firearm; (2) was previously convicted of an enumerated felony; (3) possessed the firearm within ten years of the previous conviction; (4) had the general intent to commit the crime. State v. Fields, 2012-0674, p. 6 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 315.
In the instant case, defendant stipulated at trial to five prior felony convictions. Four of the convictions, including the 2006 Texas conviction, were qualifying, enumerated offenses for purposes of La. R.S. 14:95.1. Thus, our review of defendant’s claim that the evidence was insufficient to convict is limited 19to whether the evidence proved he possessed the firearm and whether he had the general intent to possess the firearm.
Actual possession of the firearm is not necessary to prove the possession element of La. R.S. 14:95.1; constructive possession is sufficient. Fields, 2012-0674, p. 6, 120 So.3d at 315. A person is in constructive possession of a firearm if it is subject to his dominion and control. State v. Johnson, 2003-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. A defendant’s dominion and control over a firearm constitutes constructive possession even if it is only temporary and even if the control is shared. Johnson, 2003-1228, p. 5, 870 So.2d at 999; State v. Major, 2008-0861, p. 6 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 720.
However, the mere presence of a defendant in the area of contraband or other evidence, alone, does not prove that he “exercised” dominion and control over the evidence and therefore had it in his constructive possession. Johnson, 2003-1228, p. 6, 870 So.2d at 999; State v. Clements, 2012-1132, pp. 5-6 (La.App. 4 Cir. 3/13/13), 112 So.3d 306, 311. Thus, the State must prove that the offender “exercised” dominion and control over the firearm. “When the perpetrator has not carried the firearm on his person, the State must show that the defendant’s intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence.” State v. Haddad, 99-1272, p. 2, fn. 2 (La.2/29/00), 767 So.2d 682, 684, fn. 2, citing State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809.
General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed consequences as reasonably certain to result from his act. La. R.S. 14:10(2). Accordingly, the State’s burden of proof requires it to show that the |indefendant was aware that a firearm was in his presence and that he had the general intent to possess the weapon. Clements, supra.
The defendant’s “awareness” is a factor that overlaps the elements of pos *390 session and intent. State v. Beaulieu, 2012-0735, p. 17 (La.App. 4 Cir. 8/7/13), 122 So.3d 1050, 1061; Major, supra. Guilty knowledge, an essential component of any showing that a defendant has constructive possession of contraband, may be inferred from the circumstances of the transaction. State v. Pigford, 205-0477, p. 7 (La.2/22/06), 922 So.2d 517, 521; see also Clements, supra (guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence).
In applying these precepts, the appellate court, in State v. Fisher, 94-2255 (La.App. 1 Cir. 12/15/95), 669 So.2d 460, reversed the defendant’s conviction for possession of a firearm by a convicted felon. The Fisher defendant was stopped for erratic driving while driving a vehicle that was registered to his sister’s mother. The stop happened after the defendant and his sister had picked up the sister’s friend who had just been released from a correctional facility. After the search, the officers found a pistol inside the sister’s purse and a magazine inside the defendant’s pocket. The sister provided a receipt which showed she purchased the gun. She testified that she was the only one who used the gun. The sister explained that at the request of prison authorities, she gave the gun to them. They returned the gun after the visit and she placed the gun in her purse. At some point, the defendant put the magazine in his shirt.
In finding the evidence insufficient to sustain the defendant’s conviction under the Jackson standard, the appellate court reasoned:
| nClearly, defendant was aware of the gun’s presence. However, there is no evidence his intent amounted to an intent to possess the gun rather than mere acquiescence to the fact his sister owned a gun and had the gun in her purse.... While defendant’s physical possession of the ammunition is relevant to establish his knowledge and general intent, considering the manner in which he came into possession of the [magazine], the presence of the [magazine] on his person does not show his intent to exercise dominion and control over the gun.... Defendant’s sister owned the gun and stored the gun in her purse. Thus, the mere fact defendant could have reached for the gun does not establish his dominion and control over it.
Fisher, 94-2255, pp. 4-5, 669 So.2d 462-463.
The Fisher court relied in part on State v. Heacox, 543 So.2d 101 (La.App. 3 Cir.1989), another opinion that decided that the evidence was insufficient to sustain the defendant’s conviction for possession of a firearm by a convicted felon. In that matter, an undercover police officer sought to purchase marijuana from the defendant, who was a passenger in a truck driven by the owner. During the exchange, the officer saw a handgun on the front seat, between the defendant and the driver. The gun was subsequently seized from the driver’s home; which later resulted in the defendant’s arrest and conviction for second offense distribution of marijuana and possession of a firearm by a convicted felon. In concluding that the evidence was insufficient to support the defendant’s conviction for possession of a firearm by a convicted felon, the court stated:
We find that, under Jackson v. Virginia, the evidence is insufficient to find that the gun was subject to Heacox’s dominion and control. There was no evidence that Heacox was aware of the presence of the gun. Alternatively, if he was aware of the gun’s presence, there is no evidence that Heacox’s intent amounted to an intent to possess rather than mere acquiescence to the fact that *391 Willet had a gun in his truck. The gun was not found on his person or found in or on property over which he had dominion and control. There was no evidence that he had been seen with the weapon or that he touched the weapon during the October 10, 1985 transaction. Therefore, the evidence falls short of proving beyond a reasonable doubt that Heacox was in constructive possession of the weapon.
Heacox, 543 So.2d at 106.
|12The State argues that it proved constructive possession based on the testimony of Officers Prudhomme and Edge-combe; in particular, their testimony that the defendant and Ms. Taylor denied the existence of guns and/or munitions in the residence prior to the handgun’s discovery. The State cites Ms. Taylor’s testimony that she lied in order to protect the defendant. The State also maintains the “jail” tapes clearly show that the defendant had prior knowledge of the presence of the gun on the premises, despite the previous denials of the defendant and Ms. Taylor, and as such, clearly implicate him in the crime.
This Court acknowledges that the “jail” tapes show that the defendant told Ms. Taylor at some previous point in time to put the gun in “the purse,” because he knew the residence was subject to being searched. They also reveal that the defendant chastised Ms. Taylor for having a gun because she knew defendant could not afford to be around guns. However, while the tapes may undermine the credibility of both the defendant and Ms. Taylor, their credibility is undermined only to the extent that the tapes contradict their claim that he was unaware a gun was in the residence. In viewing the evidence most favorable to the prosecution, the most that any rational factfinder could conclude from the recordings is that the defendant knew the gun was someplace in the residence. We find that the issue of defendant’s general intent to possess cannot be inferred from the recorded phone calls. These recorded calls establish only that defendant believed he could not know that a gun was in the residence in which he lived and that in general, he could not be around guns.
However, neither La. R.S. 14:95.1 nor the jurisprudence interpreting its provision prohibiting convicted felons from possessing a firearm provides that a convicted felon cannot live in a residence where another member of that household | ^possesses a firearm or that a convicted felon cannot “be around” a firearm. As referenced herein, proof that a convicted felon is aware that he is “around” a firearm is not in and of itself, a violation of the statute; nor is the felon’s mere acquiescence to the presence of a firearm. In order to convict the defendant, the State has to prove that he was aware that a firearm was in his presence and that, in addition, he had a general intent to possess it. Clements, supra. The offender has to exercise dominion and control over the gun. Johnson, supra.
When we review the context of defendant’s arrest to determine whether he possessed and/or had the general intent to possess the gun in the matter at bar, the undisputed evidence established that the gun was purchased by Ms. Taylor for her personal protection about a year before defendant’s release. The gun was found in a residence where Ms. Taylor was the leaseholder and where defendant had only lived for about thirty days before his arrest. The gun was discovered within Ms. Taylor’s purse. Additionally, the closet in which the handgun, the box of ammunition, and the magazines were discovered was in an area off from the master bedroom that appeared to be within the exclusive control of Ms. Taylor. Ms. Taylor’s control of this area was bolstered by the *392 fact that neither officer could verify that defendant’s clothes were in the closet where the handgun within the purse was found. In contrast, Ms. Taylor testified that she and the defendant did not share this closet and that defendant’s clothes were kept in a computer room closet.
The recorded jailhouse telephone calls demonstrated that the defendant and Ms. Taylor were greatly concerned about the possibility that defendant might be arrested and returned to prison because Ms. Taylor’s gun was in the residence. However, nothing either said in those calls indicated a general intent by defendant ]uto possess that gun. Even when viewed in a light most favorable to the prosecution, the recorded phone calls, along with all the other evidence, evinced not a general intent by the defendant to possess the gun or exercise dominion and control over it, but rather an intent by the defendant to keep himself separate from the gun.
As noted, the gun belonged to Ms. Taylor. She had a right guaranteed by the Louisiana and United States constitutions to own a firearm and keep it in her home for self-protection. Therefore, although the defendant and Ms. Taylor might have been concerned that he could not reside with her if she had a gun in the residence; that he “told” her at some undetermined time to put the gun in her purse; and they initially denied there was a gun in the house, these factors do not establish beyond a reasonable doubt that the defendant thereby manifested an intent to possess the gun and/or that he exercised dominion and control over the gun.
The due process standard of review under Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789, does not sanction juror speculation if the evidence is such that a reasonable factfinder must have a reasonable doubt. State v. Higgins, 2003-1980, pp. 17-18 (La.4/1/05), 898 So.2d 1219, 1232, citing State v. Lubrano, 563 So.2d 847, 850 (La.1990). This Court finds that the facts of the present case are analogous to those considered in Fisher, supra and Heacox, supra. The evidence simply does not establish the essential elements of the crime and falls short of proving beyond a reasonable doubt that the defendant was in possession of the gun and had the general intent to possess. Hence, the evidence was insufficient to convict.
hsHaving found that the evidence was insufficient to convict the defendant of being a felon in possession of a firearm, we need not review defendant’s other assignments of error.
Based on the foregoing reasons, defendant’s conviction and sentence are reversed.
CONVICTION AND SENTENCE REVERSED.
LOBRANO, J., Concurs in the Result.