# Supreme Court of Louisiana

The Opinions handed down on the **11th day of December, 2025** are as follows:

**BY Guidry, J.:**

2024-K-01588        STATE OF LOUISIANA  VS.  GERALD MANCHIP WHITE (Parish of Bossier)

CONVICTIONS AND SENTENCES REVERSED. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.
Crain, J., dissents and assigns reasons.
McCallum, J., dissents for the reasons assigned by Justice Crain.
Cole, J., additionally concurs and assigns reasons.

## SUPREME COURT OF LOUISIANA

## No. 2024-K-01588

## STATE OF LOUISIANA

## VS.

## GERALD MANCHIP WHITE

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Bossier

**GUIDRY, J.**

This matter comes before us to consider whether the jury properly found the evidence was sufficient to prove the defendant constructively possessed two firearms found in his home. Finding the evidence was insufficient to prove the defendant had the requisite intent to possess the firearms, we reverse.

### FACTS AND PROCEDURAL HISTORY

The State charged the defendant with three counts of possession of a firearm by a convicted felon after parole officers found three guns in the house where he lived with family members. Two days before the guns were discovered, parole officer Ayleen Cook visited the defendant's home looking for another individual. The defendant told Officer Cook about an incident that had occurred a couple of weeks before in which an intruder invaded the home, and in the course of robbing the defendant's son, Jordan, used Jordan's gun to shoot Jordan. When Officer Cook asked the defendant if the gun was still in the house, he answered it was. Officer Cook reminded the defendant there could be no guns in the house, because he was a convicted felon,[1] and "it must be removed."

Two days later, Officer Cook, along with additional parole officers, including the defendant's assigned officer, Erikka Smith, conducted a residence check of the

---

[1] The defendant's prior felony conviction was a guilty plea entered on February 11, 2020, in the 26th Judicial District Court in Bossier Parish. He pled guilty to one count of violating La. R.S. 40:967(C) for possession of methamphetamine, a Schedule II controlled dangerous substance.

home and found an EIG EI .22 revolver in a dresser drawer in the master bedroom the defendant shared with his wife, a Smith & Wesson 9mm handgun under a mattress in the bedroom of the defendant's daughter, and a Taurus 9mm handgun in the cushions of a living room couch. As a consequence of the three guns being found in the home, the State charged the defendant with three counts of being a felon in possession of a firearm. See La. R.S. 14:95.1.

At trial, the defendant's wife, Kimberly, testified she owned the gun found in the master bedroom, explaining she stored it in a dresser drawer used exclusively by her. Defendant's adult daughter, Erin, testified that the Smith & Wesson 9mm handgun belonged to her boyfriend, who was present in the house at the time the residence check was performed. Erin testified that her boyfriend brought the gun to the house only hours before it was found. Jordan testified he owned the Taurus 9mm handgun found in the couch, explaining he obtained it after his first gun was seized by police on the night of the home invasion. Each of them testified that the defendant had no knowledge of the guns.

The jury found the defendant guilty of attempted possession of a firearm or carrying a concealed weapon by a convicted felon for the gun found in the master bedroom (count 1). The jury found the defendant not guilty of possessing the gun found in his daughter's bedroom (count 2) and guilty of possessing the gun found in the couch (count 3). The trial court sentenced the defendant to seven years in prison at hard labor and a $500 fine on count 1, and 14 years in prison at hard labor and a $1,000 fine on count 3, with the sentences to run concurrently. The court of appeal affirmed, finding no merit in the challenges to the sufficiency of the evidence, but vacated the fines and remanded the case for a determination of the defendant's ability to pay. State v. White, 55,951 (La. App. 2d Cir. 11/20/24), 401 So. 3d 932.

2

On application of the defendant, we granted certiorari to review the sufficiency of the evidence to support the defendant's convictions. State v. White, 24-01588 (La. 5/6/25), 408 So. 3d 198.

## DISCUSSION

A conviction based on insufficient evidence violates Due Process and cannot stand. See U.S. Const. amend XIV; La. Const. art. I, §2. Appellate review for constitutional sufficiency of the evidence is limited by the due process standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Ruffins, 24-01512, p. 4 (La. 6/27/25), 420 So. 3d 3, 6. The task of a reviewing court is to determine the legal question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Musacchio v. United States, 577 U.S. 237, 243, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original)). Whether the proof is sufficient turns on the facts of the case. See State v. Harris, 94-0970, p. 4 (La. 12/8/94), 647 So. 2d 337, 338-39. The Jackson standard does not authorize the reviewing court to substitute its appreciation of the facts for that of the factfinder, assess credibility of witnesses, or reweigh evidence. State v. Thompson, 15-0886, p. 9 (La. 9/18/17), 233 So. 3d 529, 537.

When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. Circumstantial evidence is "evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred." State v. Alexander, 22-01205, p. 2 (La. 5/5/23), 362 So. 3d 356, 358. (quoting State v. Chism, 436 So. 2d 464, 468 (La. 1983)). Importantly, the due process standard in Jackson does not allow a jury to speculate on the probabilities of guilt where rational jurors would necessarily

entertain a reasonable doubt. The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation. Alexander, 22-01205 at p. 2, 362 So. 3d at 358. A factfinder cannot be permitted to speculate if the evidence is such that reasonable minds must have reasonable doubt. See State v. Lubrano, 563 So. 2d 847, 850 (La. 1990).

Louisiana Revised Statutes 14:95.1[2] prohibits certain felons from possessing firearms. To convict, the State is required to prove, beyond a reasonable doubt, that the defendant had: 1) possession of a firearm, 2) a prior conviction for an enumerated felony, 3) an absence of the ten-year statutory period of limitation, and 4) a general intent to commit the offense. State v. Ball, 99-0428, p. 3 (La. 11/30/99), 756 So. 2d 275, 277.

"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." La. R.S. 14:27(A). "An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt." La. R.S. 14:27(C). Thus, to convict for attempted possession of a firearm by a convicted felon, the State was required to prove either: 1) the defendant had the specific intent and did or omitted an act with the specific goal of possessing the firearm, or 2) the defendant committed the charged offense of possession. See La. R.S. 14:27; State ex rel. Elaire v.

---

[2] Pertinently, La. R.S. 14:95.1(A) provides, "It is unlawful for any person who has been convicted of … any violation of the Uniform Controlled Dangerous Substances Law which is a felony … to possess a firearm or carry a concealed weapon." (Footnote omitted.)

4

Blackburn, 424 So. 2d 246, 251 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983) (recognizing the legitimacy of a "compromise verdict").

Defendant's 2020 drug conviction and the fact that the ten-year cleansing period between the prior conviction and the current offense did not lapse are undisputed. His sole challenge is to the requirements of possession and intent.

**Possession**

Possession for the purposes of La. R.S. 14:95.1 can be either actual or constructive. See State v. Day, 410 So. 2d 741, 743 (La. 1982). Here, the State concedes that the defendant was not in actual possession. Therefore, the possession at issue is that of constructive possession. "'[C]onstructive possession' is a term of legal art, describing the situation in which a person, not in physical possession of a thing, can, nevertheless be considered to be in legal possession of the thing." State v. Cann, 319 So. 2d 396, 397 (La. 1975). Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control, even if only temporarily or shared. State v. Johnson, 03-1228, p. 5 (La. 4/14/04), 870 So. 2d 995, 999. Therefore, while the prosecution is not required to prove actual possession, it must otherwise prove constructive possession; that is, show the defendant exercised dominion or control over the illegal item. State v. Walker, 369 So. 2d 1345, 1346 (La. 1979).

Constructive possession exists when a person has guilty knowledge of the contraband's presence and exercises dominion and control over it. State v. Fisher, 19-01899, p. 4 (La. 5/13/21), 320 So. 3d 400, 403. Guilty knowledge is essential for a defendant to have constructive possession of contraband. State v. Pigford, 05-0477, p. 7 (La. 2/22/06), 922 So. 2d 517, 521. Mere presence in the area where a firearm is discovered does not, alone, prove the defendant exercised dominion and

control over the firearm and therefore had it in his constructive possession. See Johnson, 03-1228 at p. 6, 870 So. 2d at 999 (citing Walker, 369 So. 2d at 1346).

Whether possession is proven sufficient to convict depends on the particular facts of the case. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Johnson, 03-1228 at p. 5, 870 So. 2d at 998. The Jackson standard leaves juries vast discretion to decide what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts. State v. Toby, 23-0722, p. 4 (La. 10/25/24), 395 So. 3d 831, 834. A defendant's awareness of the presence of a gun is a factor that overlaps both the possession and intent elements—it is used to prove possession and must exist for the defendant to have intent. State v. Evans, 29,675, p. 8 n.5 (La. App. 2d Cir. 9/24/97), 700 So. 2d 1039, 1043 n.5, writ denied, 97-2942 (La. 1/9/98), 705 So. 2d 1121.

The jury found the defendant guilty of attempted possession of the firearm found in the master bedroom that he shared with his wife. Notably, the gun was found in a dresser drawer that contained clothing items that in color and design appeared to belong to a woman. Kimberly, the defendant's wife, testified that the drawer containing the gun also contained intimate apparel[3] and an electronic gaming device she stated belonged to her. To establish the defendant's dominion and control over the gun found in the dresser drawer, the State offered the testimony of Officer Cook, who stated that the dresser was located in the bedroom that the defendant shared with his wife and that the defendant's parole paperwork was found in another drawer of the same dresser in which the gun was found. Photographs introduced into evidence by the State, however, display the gun and the parole paperwork in

---

[3] Kimberly described the items as her underwear, bras, and girdle.

what appear to be two separate dressers. Kimberly likewise testified that the parole documents were in a different "chest of drawers" than the one that contained the gun.

The State introduced color photographs of the dressers as exhibits at trial. Exhibits S3 and S4 display a dresser with the top drawer open and a revolver-style handgun inside. Exhibit S5 displays another open drawer in the same dresser containing some loose coins, baby socks, female intimate apparel, packaging for some type of hair product, and a single bullet.[4] Due to the lighting in the photos, it is unclear whether the dresser is dark brown or black, but it is clearly a dark color. Additionally, the flat surfaces of the drawer fronts display silver, cup-shaped drawer pulls. Exhibit S6 is a photograph of a golden-brown dresser with an inset drawer front displaying a decorative arch-shaped, hinged drawer pull on the front surface of a closed drawer and an open drawer beneath containing the defendant's parole papers and some clothing items.[5]

In State v. Scott, 13-0321, pp. 12–13 (La. App. 4th Cir. 2/26/14), 136 So. 3d 383, 391, writ denied, 14-0427 (La. 4/17/14), 138 So. 3d 627, the fourth circuit observed:

> [N]either La. R.S. 14:95.1 nor the jurisprudence interpreting its provision prohibiting convicted felons from possessing a firearm provides that a convicted felon cannot live in a residence where another member of that household possesses a firearm or that a convicted felon cannot "be around" a firearm. As referenced herein, proof that a convicted felon is aware that he is "around" a firearm is not in and of itself, a violation of the statute; nor is the felon's mere acquiescence to the presence of a firearm. ... The offender has to exercise dominion and control over the gun.

Observing such, the fourth circuit held that despite the defendant's knowledge that his purported "common law wife" had a gun in the house that he had instructed her to put in a purse, the evidence was insufficient to convict the defendant. The

---

[4] Officer Cook identified the drawer as being the second drawer in the dresser. Kimberly described the items in the drawer as being her "grandbaby's socks, [her] sports bra, [her] change."

[5] Kimberly identified the items as her grandbaby's clothes.

court pointed out that the wife had purchased the gun a year before the defendant's release from prison for her own protection. The gun was also in the home that the wife had rented, but where the defendant had only lived for 30 days prior to his arrest for possession of the gun. The court further noted the gun was found in a closet that appeared to be within the wife's exclusive control, and the police were unable to verify whether any of the defendant's clothes were in the closet to refute the wife's assertion she did not share the closet with the defendant. Scott, 13-0321 at p. 13, 136 So. 3d at 391-92. Accordingly, the fourth circuit determined that there was no showing that the defendant exercised dominion and control over the gun. Scott, 13-0321 at p. 14, 136 So. 3d at 392.

Herein, there was no evidence to prove that the gun found in the defendant's bedroom was subject to his dominion and control. Similar to Scott, the defendant moved into the home, which had been procured by Kimberly, merely three weeks before his arrest for possessing the gun found in the dresser. The rest of his family had been residing in the home for well over a year. Moreover, the dresser drawer appeared to be within the exclusive control of Kimberly. The gun was found in a drawer full of Kimberly's belongings, and while Officer Cook testified that the defendant's parole papers were found in the same dresser, Officer Cook's testimony is refuted by the State's own photos showing that the parole papers were in an entirely different dresser. The State offered no evidence to establish that the defendant had occasion to access the drawer containing only his wife's belonging[6] nor was any evidence introduced to establish that the defendant had accessed the particular dresser or drawer in which the gun was found. At best, the evidence

---

[6] Kimberly, however, testified that the defendant might have utilized the gun in the dresser had he known of its presence at the time the intruder attacked Jordan. It is recognized that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense or in defense of others. State v. Blache, 480 So. 2d 304, 308 (La. 1985).

established that the defendant utilized the bed, but no other furniture in the bedroom. There was no evidence introduced that indicated that the defendant used any other furniture in the room. Hence, the evidence offered by the State failed to exclude the hypothesis that Kimberly owned and never informed the defendant about the gun in the dresser, which she had placed there over a year before he moved into the home.

The jury further found the defendant guilty of possessing the gun found in the living room couch. While the presence of any gun in the home may have been a violation of the conditions of the defendant's parole, the mere presence of the guns along with the defendant's knowledge of a gun being in the home was not sufficient to constitute constructive possession in this case.

The defendant's son, Jordan, testified that the gun in the couch belonged to him. Although Jordan resided in the home, he did not have a bedroom in the home, as the three bedrooms were respectively occupied by his parents, his sister and her child, and his grandmother. Therefore, Jordan slept on the larger of two couches in the living room of the home. Jordan testified that he obtained the gun[7] because the home was in a high-crime area and because of the prior home invasion in which he was shot and robbed, and his father was injured. He testified that he generally kept the gun in his truck or in the couch, which served as his bed. On the day of the residence check, which took place around 10 a.m., Jordan alone was found in the living room, as he had been asleep on the couch when the officers arrived. The defendant and Kimberly were asleep in the master bedroom, and the defendant's daughter, Erin, and her boyfriend were in Erin's bedroom.[8]

---

[7] There was conflicting testimony regarding whether the gun was the same gun that Jordan possessed at the time of the home invasion or a new gun. Officer Cook testified that the defendant told her the gun was still in the home, while Jordan testified that the police officers who investigated the home invasion took the gun, so he obtained a new one the following day.

[8] The grandmother's room was unoccupied on the day of the residence check, as she was in the hospital. Officers testified that they had to obtain a key to unlock and inspect the room, which was padlocked.

Officer Cook testified that she did not remember anyone claiming ownership of the guns at time of the defendant's arrest or at any time.[9] She said all the family members were present in the living room with the defendant when she told the defendant he was being arrested for possessing the three guns found in the home, but she later admitted she could not remember if Jordan was in the living room or outside on the porch. The other two parole officers who testified at trial, John Rowe and Shari Cone, also stated that no one claimed to own or possess any of the guns. Officer Cone mentioned, however, that the defendant was not present in the living room when the gun in the couch was found. She further stated that all of the persons found in the house were either taken to the living room or outside onto the front porch. Both Kimberly and Erin testified that neither the defendant nor Jordan were present when they were brought to the living room. Likewise, Jordan said he was ordered to go outside onto the porch of the home by Officers Cook and Smith.

In State v. Fisher, 94-2255, pp. 2-3 (La. App. 1st Cir. 12/15/95), 669 So. 2d 460, 461-62, police officers stopped the defendant after observing the vehicle he was driving cross over the center line of the roadway, return to its lane, and then go onto the shoulder. The defendant's sister was a passenger in the front seat of the vehicle. After obtaining the defendant's consent to search the vehicle, officers found a pistol inside his sister's purse. An officer noted that the purse was open and based on where it was located on the passenger floorboard, the defendant driver would have been able to see and grab the gun. After conducting a pat down search of all the occupants of the vehicle, a clip for the gun was found inside the defendant's pocket. Despite the foregoing evidence, the first circuit found "the mere fact defendant could

---

[9] Jordan testified that he told Officer Cook that the gun in the couch belonged to him. In photographs introduced by the State, the seat cushions for the couch are removed with an open wallet containing a driver's license visible along the front edge of the couch and a black gun visible to the left, behind the wallet, along the back edge of the couch under a cushion on the back of the couch. None of the witnesses mentioned the wallet or to whom it belonged or how it came to be under the seat cushions of the couch. The name and picture on the license are not discernable from the photo introduced into evidence.

have reached for the gun does not establish his dominion and control over it." Fisher, 94-2255 at p. 5, 669 So. 2d at 463.

More recently, in State v. Johnson, 24-462 (La. App. 3d Cir. 5/8/25), 416 So. 3d 627, the defendant was convicted of illegal carrying of a weapon and possession of a controlled dangerous substance based on being found in a hotel room containing weapons and illegal drugs. The hotel room in which the defendant was found had been rented by a female friend, and when the police arrived at the room, they discovered a pistol in plain view on a nightstand and were informed by the defendant that there was also a rifle in the room. Johnson, 24-462 at p. 8, 416 So. 3d at 633. The illegal drugs and rifle were not in plain view but were found in a bag belonging to the female friend. Johnson, 24-462 at p. 11, 416 So. 3d at 634. Also, when the police initially arrived, they found the defendant and his friend undressed, with the defendant sitting on the toilet in the bathroom. Johnson, 24-462 at p. 8, 416 So. 3d at 633. The female friend testified that the drugs and guns discovered in the hotel room belonged to her. Johnson, 24-462 at p. 11, 416 So. 3d at 634.

In reversing the defendant's convictions, the third circuit noted that the jury had to base its verdict on circumstantial evidence for which the State was required to exclude every reasonable hypothesis of innocence. Yet, the court found the State did not even exclude the hypothesis that the female friend owned and concealed everything. The court further found that despite the defendant's knowledge of a rifle being in the hotel room and the pistol being in plain view, the available evidence was inadequate to prove he used, possessed, or had either weapon under his immediate control. Hence, the court reversed both of his convictions. Johnson, 24-462 at pp. 28-29, 416 So. 3d at 645.

As for the gun found in the living room couch in the instant case, although in a common area of the home, the couch was also Jordan's designated bed. While there was no evidence presented that Jordan had the exclusive use of the couch, there is

11

no dispute that the couch was solely being used by Jordan prior to the gun being found. And whether the gun was the same gun that he owned at the time of the home invasion or was a new gun acquired after the home invasion, none of the evidence offered by the State contradicted Jordan's assertion that the gun belonged to him. Notably, Jordan's testimony that he kept the gun in his truck or in the couch established that the gun was generally subject to Jordan's dominion and control. There was no evidence presented to show that the gun was accessible to the defendant while it was in the couch, as none of the witnesses testified that the defendant was seen or found near the couch or in the living room prior to being detained by the parole officers. Hence, while the evidence clearly establishes the gun in the couch was subject to Jordan's control, it falls far short of establishing that the gun was ever jointly subject to the defendant's dominion and control.

**Criminal Intent**

Possession must be intentional. "[T]he State must show that the defendant's intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence. When the State relies on constructive possession, it must prove the defendant was aware the firearm was in his presence, and he had the intent to possess it. State v. Haddad, 99-1272, p. 2 n.2 (La. 2/29/00), 767 So. 2d 682, 684 n.2, cert. denied, 531 U.S. 1070, 121 S. Ct. 757, 148 L.Ed.2d 660 (2001).

A violation of La. R.S. 14:95.1 requires only general criminal intent. State v. Godeaux, 378 So. 2d 941, 944 (La. 1979). Whereas specific criminal intent is an element of an attempted offense. La. R.S. 14:27. Specific intent may be inferred from the circumstances surrounding the offense and the defendant's conduct. State v. Jones, 10-0762, p. 6 (La. 9/7/11), 74 So. 3d 197, 201. As defined in La. R.S. 14:10, "[s]pecific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal

12

consequences to follow his act or failure to act[,]" while "[g]eneral criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." However, critical to the finding of intent is the defendant's awareness of being in the presence of the firearm. See Haddad, 99-1272 at p. 2 n.2, 767 So. 2d at 684 n.2; Evans, 29,675 at p. 8 n.5, 700 So. 2d at 1044 n.5.

As previously mentioned, the sole evidence presented by the State to prove the defendant's awareness of the gun in the dresser was the assertion that the defendant's parole papers were found in the same dresser. As the photographs introduced by the State clearly discredit that assertion, and as the State provided no other evidence to prove that the defendant was aware of the gun in the dresser in the master bedroom, we find the State failed to produce sufficient evidence to prove the defendant intended to possess that gun. See Walker, 369 So. 2d at 1346 (wherein this court reversed the defendant's conviction for drug possession because the prosecution presented no evidence to show that the defendant knew or had reason to know that the drugs were present on the premises).

As for the gun in the couch, Officer Cook testified regarding her conversation with the defendant two days before the residence check took place, wherein the defendant told her Jordan was shot with his own gun inside the house weeks earlier. When she asked the defendant if "the gun" was still in the house, he said it was. Two days after warning the defendant the gun could not be kept in the house, Officer Cook and other officers conducted the residence check that revealed the three guns in the home.

While awareness is necessary to prove the intent to possess, awareness alone is insufficient to prove constructive possession. As the first circuit noted in Fisher:

Clearly, defendant was aware of the gun's presence. However, there is no evidence his intent amounted to an intent to possess the gun rather than mere acquiescence to the fact his sister owned a gun and had the gun in her purse. Defendant admits the clip to the gun was found in his pocket. However, the ammunition alone was not a firearm for purposes of La. R.S. 14:95.1. While defendant's physical possession of the ammunition is relevant to establish his knowledge and general intent, considering the manner in which he came into possession of the clip, the presence of the clip on his person does not show his intent to exercise dominion and control over the gun. Defendant did not testify. However, his sister testified that she removed the clip before giving the gun to the guard at the gate. She also testified that she then must have placed the clip on the seat. Defendant's sister owned the gun and stored the gun in her purse. Thus, the mere fact defendant could have reached for the gun does not establish his dominion and control over it.

94-2255 at pp. 4–5, 669 So. 2d 462-63 (case citations omitted).

Similarly, in <u>Scott</u>, 13-0321 at p. 14, 136 So. 3d at 392, the court found the fact that the defendant's recorded phone calls proved he was aware that a gun was in the home and that he had told his wife to put the gun in a purse "evinced not a general intent by the defendant to possess the gun or exercise dominion and control over it, but rather an intent by the defendant to keep himself separate from the gun."

Herein, conceding the defendant admitted to Officer Cook his awareness that his son still had a gun in the house, he did not disclose any intent to use or take possession of the gun. Notably, despite informing Officer Cook that his son had been injured in the home invasion, neither Officer Cook nor any of the other witnesses testified that the defendant expressed a desire or need to arm himself as a result of the incident or because of the high crime neighborhood in which the home was located.

Thus, the defendant's statement that "the gun" was still in the house, without more, was insufficient to prove the defendant had the requisite intent to possess the gun belonging to Jordan.

## CONCLUSION

For the reasons herein expressed, we conclude the court of appeal erred in finding the evidence sufficient to prove the defendant had the requisite intent to

constructively possess either of the guns associated with his convictions of attempted possession and possession of a firearm by a convicted felon. Accordingly, the defendant's convictions and sentences are reversed.

**CONVICTIONS AND SENTENCES REVERSED.**

# SUPREME COURT OF LOUISIANA

## No. 2024-K-01588

## STATE OF LOUISIANA

## VS.

## GERALD MANCHIP WHITE

*On Writ of Certiorari to the Court of Appeal, Second Circuit,
Parish of Bossier*

**WEIMER, C.J.**, additionally concurring.

In my view, the court of appeal erroneously confused the evidence of awareness and proximity for proof of dominion and control and intent, in conflict with the statutory language and jurisprudence. See **State v. Johnson**, 404 So.2d 239, 245 (La. 1981). Furthermore, although **Jackson v. Virgina**, 443 U.S. 307 (1979), does not demand that the evidence "rule out every hypothesis except that of guilt,"[1] it does require that it rule out "every reasonable hypothesis of innocence."[2] The state's evidence in this matter does not exclude a reasonable hypothesis that defendant was unaware of the guns' whereabouts and/or, equally importantly, that he had no intent to possess the guns. Rather than proving any crimes, the evidence, at most, proves he may have violated his parole terms by acquiescing in his relatives' keeping their own guns in their shared home.

On this point, the family lived in a small, modest home in a high crime area. There had been a recent break-in at the family's home, and defendant's son was shot. Many hold the "right to bear arms" of the Second Amendment and the related provision of the Louisiana Constitution sacrosanct. U.S.C.A. Const. Amend. 2; La.

---

[1] **State v. Mack**, 13-1311, p. 8 (La. 5/7/14), 144 So.3d 983, 988 (*quoting* **Wright v. West**, 505 U.S. 277, 296 (1992)).

[2] See also La. R.S. 15:438.

1

Const. art. I, § 11. There is no evidence the other family members had forfeited their right to bear arms, and the facts of this matter unfortunately demonstrate the need to protect themselves.

A contrary decision in this matter would adversely impact the rights of the other family members in the household and force on them the choice of exercising their constitutional rights or requiring a father/husband to live off the premises. The facts indicate defendant had only weeks before being found worthy of being released on parole.

For these reasons, I additionally concur in the majority's opinion in this matter.

SUPREME COURT OF LOUISIANA

No. 2024-K-01588

STATE OF LOUISIANA

VS.

GERALD MANCHIP WHITE

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Bossier

**CRAIN, J., dissenting.**

The defendant admitted to Officer Cook a gun was in the house just two days before three guns were found during the residence check. No one testified that a gun was removed from the residence after the defendant's conversation with Officer Cook, despite the fact that he was afforded the opportunity to remove any guns from the house or tell his family members to do so. Rather, the evidence establishes the defendant chose to remain in the house where guns were stored in locations easily accessible to him.

The jury was free to assess the credibility of the witnesses and weigh the evidence presented. The *Jackson* standard leaves juries vast discretion to decide what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts. *See Musacchio v. United States*, 577 U.S. 237, 243, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016)*State v. Toby*, 23-0722 (La. 10/25/24), 395 So. 3d 831, 834. It was reasonable for the jury to infer the defendant had constructive possession of the two guns and the requisite criminal intent to commit the charged offenses. Since the evidence was sufficient to sustain a conviction for both charged counts of possession of a firearm by a convicted felon, the evidence was sufficient to support defendant's conviction of the lesser-included verdict of attempted possession of a firearm by a felon on count 1 (the gun in the bedroom). *See State ex rel. Elaire v. Blackburn*, 424 So. 2d 246, 251

1

(La. 1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983) (recognizing the legitimacy of a "compromise verdict"). The majority errs in reweighing the evidence, assessing the credibility of the witnesses, and substituting its own opinion for that of the jury. I dissent and would affirm.

# SUPREME COURT OF LOUISIANA

## No. 2024-K-01588

## STATE OF LOUISIANA

## VS.

## GERALD MANCHIP WHITE

### On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Bossier

**COLE, J., additionally concurring.**

I agree with the majority. I write separately for two reasons. First, I agree with Chief Justice Weimer that it is important to reiterate the Second Amendment rights of other occupants of the home when reviewing the facts of this case and other similar cases.

Second, the standard for parole revocation is different from the standard for securing a criminal conviction. At oral argument in this case, both defendant and the state agreed that this defendant's parole could have validly been revoked under that more lenient standard.